FILED
01/28/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2024

## STATE OF TENNESSEE v. JEFFREY PETE FAUTT AND ROBIN LEANNE OSBORNE

**Appeal from the Circuit Court for Maury County**
**Nos. 29706, 29710    J. Russell Parkes, Judge**

_____

### No. M2023-01083-CCA-R3-CD

_____

The Defendants, Jeffrey Pete Fautt and Robin Leanne Osborne, appeal their convictions for selling one-half gram or more of methamphetamine. They argue the evidence was insufficient to support the guilty verdicts because officers' testimony was inconsistent, unreliable, and uncorroborated. Specifically, they assert that the controlled purchases were not captured by audio and video recordings, the searches of the confidential informant's vehicle were not recorded, and officers did not deploy a canine unit during the searches of the informant's vehicle. The Defendants additionally contend that Defendant Osborne's testimony should have been accredited over the confidential informant's testimony. The State avers that the testimony, video evidence, and laboratory results introduced at trial were sufficient to support the jury's verdicts. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Ronald G. Freemon, Columbia, Tennessee, for the appellants, Jeffrey Pete Fautt and Robin Leanne Osborne.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Brent Cooper, District Attorney General; and Pam Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from a confidential informant's ("informant") three controlled purchases of methamphetamine from the Defendants on August 2, 4, and 17, 2021. In May 2022, a Maury County grand jury returned separate indictments against the Defendants, charging them each with three counts of sale of one-half gram or more of methamphetamine. Tenn. Code Ann. §§ 39-17-417(c)(1), -434. A joint jury trial ensued on March 23, 2023, and continued to March 24, 2023.

At trial, Sergeant Jeff Wray of the Maury County Sheriff's Department's ("MCSD") narcotics unit testified that prior to the August controlled purchases, the informant had been pulled over by another MCSD officer. Officers discovered that the informant's fiancée possessed methamphetamine during that traffic stop. As a result of that stop, the informant agreed to cooperate with MCSD officers in investigating the Defendants to "help out" his fiancée.[1] The informant testified that he knew both Defendants and had visited their house "[a]t least twice a week" to purchase drugs prior to the August controlled purchases. The informant stated that the Defendants were in a romantic relationship at the time of the controlled purchases. He identified both Defendant Fautt and Defendant Osborne in court.

On August 2, 2021, the informant drove to a location previously agreed upon with law enforcement, and both he and his vehicle were searched by law enforcement. Sgt. Wray stated no recording was made of the search, noting the limited capacity of the recording devices' storage and battery life. He testified that he searched the informant while other officers searched the informant's vehicle. Officers then placed a video and audio recorder on the informant, gave him $250 for the purchase, and instructed him to go "[s]traight [to the Defendants' house] and straight back."

When the informant arrived at the Defendants' house, both Defendants were present, and Defendant Osborne's young grandchild was also at the house. The informant testified and the recording showed the informant accompanying Defendant Osborne to her bedroom. For most of the video and audio recording, the camera was positioned such that only the ceiling and upper parts of the walls were captured. However, the informant identified the female voice in the recording as Defendant Osborne's voice and the male voice other than his own as Defendant Fautt's voice. During this recording, Defendant Osborne said, "That's what I'll keep for me . . . that's only [eleven]" and something to the effect of "my dude lives less than a quarter of a mile . . . see how quick he can get here."

---

[1] It is unclear from the record whether officers asked the informant to assist with investigating the Defendants specifically or if the informant first apprised the officers of the Defendants' involvement in the sale of methamphetamine. At trial, the informant stated, "[i]t was kind of a both parties knowing kind of thing. [The officers] just asked if I could do anything, and I told them I could."

The informant stated that the "eleven" that Defendant Osborne mentioned referred to the eleven grams of methamphetamine she was giving to the informant, which was less than the half-ounce he was supposed to obtain. During this conversation, Defendant Osborne requested that Defendant Fautt bring a glass pipe into the bedroom. The recording depicted Defendant Fautt bringing the pipe, lighting it, and smoking it.

The informant testified that he gave Defendant Osborne $250 in exchange for the methamphetamine. The informant then stayed at the Defendants' house for approximately forty-five minutes to wait for the remaining amount of methamphetamine to be delivered. However, he eventually left and gave the officers the eleven grams he had already obtained. He then returned to the Defendants' house and collected the additional three grams of methamphetamine from Defendant Fautt. The informant's return to the Defendants' house was also video and audio recorded. Both packages the informant obtained from the Defendants on August 2 field-tested positive for methamphetamine. The two packages were subsequently submitted to the Tennessee Bureau of Investigation ("TBI") for testing. TBI special agent forensic scientist Laura Cole confirmed that the substance in the two packages weighed 10.81 grams and 2.9 grams respectively and contained methamphetamine. The State admitted as exhibits the two packages of methamphetamine that the informant purchased on August 2, 2021.

On August 4, 2021, a second controlled purchase occurred. Sgt. Wray and the other officers followed the same procedures prior to the purchase as on the previous occasion by searching the informant and his vehicle and equipping him with recording devices. The searches of the informant and his vehicle were not recorded. Lieutenant Brian Cook of the MCSD narcotics unit additionally testified that he was present for both the August 2 and 4 searches of the informant's vehicle, asserting that the standard procedures were followed during both searches. The informant was given $250 and instructed to purchase a half-ounce of methamphetamine. The informant drove to the Defendants' house, but nobody answered the door when he knocked. The informant called Defendant Osborne, and Defendant Fautt soon arrived. In Defendant Osborne's bedroom, Defendant Fautt measured out a half-ounce of methamphetamine, mentioning "scales" and "ounces," while the informant stood to the side. The informant testified that he gave Defendant Fautt $250, and Defendant Fautt gave the informant the methamphetamine in exchange. Sgt. Wray testified that the substance obtained on August 4, admitted as an exhibit, field-tested positive for methamphetamine. It was subsequently submitted to TBI for testing. TBI special agent forensic scientist Andrea King confirmed that the substance weighed 12.53 grams and was positive for methamphetamine.

On August 17, 2021, the third and final controlled purchase occurred. The officers and the informant followed the same procedures prior to the purchase. Sergeant Joey Parkes, a canine handler, testified that he searched the informant's vehicle at the August 17 controlled purchase. He explained that he did not deploy his canine during the search of the informant's vehicle because the canine was typically only deployed during search warrants or when the vehicle's owner did not consent to a search. The searches of the informant and his vehicle were not recorded. Officers gave the informant $250 and instructed him to purchase a half-ounce of methamphetamine. However, due to a technical malfunction, the video and audio recordings did not record the informant's controlled purchase on that occasion, although the officers were still able to view the events through a livestream. Both Defendants were present inside the home on this occasion. Defendant Osborne gave the informant the methamphetamine, also in her bedroom, and the informant gave Defendant Osborne the $250. The informant "stood around and talked for a few minutes and then went back to law enforcement." Sgt. Wray testified that the package of methamphetamine obtained on that occasion, later admitted as an exhibit, field-tested positive for methamphetamine. The substance was submitted to TBI for testing. TBI special agent forensic scientist John Scott confirmed that the submitted substance weighed 9.06 grams and tested positive as methamphetamine.

Defendant Osborne testified at trial and confirmed that the informant would come to the Defendants' house approximately twice a week. However, she testified that the subject of her conversations with the informant in the recording of August 2 did not concern purchasing methamphetamine but rather concerned her brother's birthday party the day before. She stated that the informant "was saying something about [how] he lost some [oxycodone]" while he was there the previous day for the birthday party. She explained that the informant's girlfriend had given Defendant Osborne $50 to purchase a birthday gift and that Defendant Osborne gave the informant $11 in change from that amount. She denied that the informant gave her any money for drugs on August 2, 4, or 17. She also denied that Defendant Fautt sold drugs to the informant.

Defendant Fautt did not testify, and the defense presented no further proof. The jury returned a verdict, finding Defendant Fautt guilty of the two counts relating to the August 2 and 4 controlled purchases but acquitting him of the count relating to August 17. Defendant Osborne was found guilty as charged. After a sentencing hearing, Defendant Fautt received an effective sentence of seventeen years and six months for his two convictions, and Defendant Osborne received an effective sentence of twenty years for her three convictions. This timely appeal followed.

## II.  ANALYSIS

On appeal, the Defendants assert that the evidence was insufficient to support their convictions because it was unreliable and not credible, arguing that the witness testimony was inconsistent or uncorroborated by physical evidence.  The State responds that a reasonable trier of fact could have found the Defendants guilty based on the evidence.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  If a convicted defendant makes this showing, the finding of guilt shall be set aside.  Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).  Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  The law provides this deference to the jury's verdict because

> [t]he jury and the [t]rial [j]udge saw the witnesses face to face, heard them testify, and observed their demeanor on the stand, and were in much better position than we are, to determine the weight to be given their testimony. The 'human atmosphere of the trial and the totality of the evidence' before the court below cannot be reproduced in an appellate court, which sees only the written record.

*Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963) (citations omitted).  Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence

and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

It is an offense to knowingly sell methamphetamine. Tenn. Code Ann. § 39-17-434(a)(3). A sale occurs where there has been "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002) (citation omitted). "'Knowing' means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-106(a)(23). As is relates to the sale of a controlled substance, "the State must prove that the defendant was 'aware of the nature of the conduct' or that his or her conduct involved a sale." *State v. Gabehart*, 691 S.W.3d 24, 26 (Tenn. Crim. App. 2024) (quoting Tenn. Code Ann. § 39-11-302(b)). The sale of a substance containing methamphetamine in the amount of one-half gram or more is a Class B felony. Tenn. Code Ann. §§ 39-17-417(c)(1), -434(e)(1).

Here, the Defendants argue that the evidence was insufficient to support their convictions because the informant's testimony was uncorroborated by the video recordings and because the searches of the informant and his vehicle were unreliable, given that they were not recorded and a canine unit was not employed during the search. However, the recordings, the informant's testimony, officers' testimony, and TBI lab results together established that a methamphetamine transaction occurred on August 2, 4, and 17, 2021. *See State v. Biggs*, 211 S.W.3d 744, 748 (Tenn. Crim. App. 2006) (concluding sufficient evidence existed to sustain a conviction for the sale of cocaine where the jury credited an officer's testimony that he purchased cocaine from the defendant while another officer monitored the transaction through audio equipment); *State v. Wells*, No. M2022-00512-CCA-R3-CD, 2023 WL 4930145, at *5 (Tenn. Crim. App. Aug. 2, 2023) (concluding sufficient evidence supported a conviction for the sale of cocaine where the defendant argued that, *inter alia*, the actual transaction with a confidential informant was not captured by the audio and video recording and was not observed by law enforcement). The recordings and testimony provided that on all three occasions in August, the informant gave the Defendants $250 in exchange for more than one-half gram of methamphetamine.

Nevertheless, the Defendants assert generally that the jury should have accredited Defendant Osborne's testimony over the informant's. However, insofar as Defendant Osborne's testimony contradicted the informant's, credibility determinations are squarely within the province of the jury, sitting at trial as the finder of fact. *See Carroll*, 370 S.W.2d at 527 ("On appeal, . . . the jury's verdict is to be taken as establishing the truth of the case."). In reaching a guilty verdict, the jury effectively resolved any conflicts in favor of

the State's theory. *Grace*, 493 S.W.2d at 476. The Defendants have failed to demonstrate why any of the arguments asserted on appeal undermine the jury's accreditation of the informant's testimony, the audio and video recordings, and the testimony of law enforcement. The Defendants are not entitled to relief.

### III.    CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE
